Appeal of the Des Moines Water Company.

In the Matter of the Appeal of the Des Moines Water Company.

1. **Taxation :** CORPORATION : MUNICIPAL CORPORATION. A water company, which supplies the city with water, whose rates are regulated by the city council, and which, by the terms of the ordinance conferring its powers, may be purchased at a fixed price by the city, is, nevertheless, a private corporation, and its property is subject to taxation.

2. ———— : ———— : EXTINCTION OF FIRES. Nor is its property exempt from taxation by section 797 of the Code, since its primary and exclusive use is not for the extinction of fires.

3. ———— : ———— : ASSESSMENT. The real and personal property of such a corporation may be assessed to the company, and must be so assessed when the shares of the company have not been otherwise assessed.

4. ———— : ———— : ————. The land, buildings, machinery and water mains are all real estate, and the mains are subject to assessment in the township where the machinery which propels the water through them is situated.

5. ———— : EQUALIZATION : APPEAL. Where an appeal is taken by the tax-payer from an assessment fixed by the board of equalization, the amount of the assessment cannot be raised by the court to which the appeal is taken.

6. ———— : ASSESSMENT : STATUTE. The statute authorizes the assessment of the property of corporations the same as that of individuals, and also the assessment of the shares of stock to the individual owners, and taxation under either method is legal.

*Appeal from Polk Circuit Court.*

FRIDAY, APRIL 19.

THE Des Moines Water Company was incorporated in 1871. The general nature of its business, as set forth in the articles of incorporation, is "the construction of water works, and the operation and use of the same, for the purpose of supplying the city of Des Moines and its citizens with water. * * *"

By an ordinance of the city council the water company was empowered to build, maintain and operate water works in said city, to supply said city and its inhabitants with pure

and wholesome filtered water, and to use streets, alleys and avenues of said city for laying pipes. Said ordinance further provides that said company shall adopt the system known as Holly Water-works, and maintain the same in such condition as to be capable, at all times, of throwing six streams at once, one hundred feet vertically, through a one-inch nozzle, and said company shall erect, for fire purposes, as many hydrants as the city council shall, from time to time, direct, and the city shall pay said company the actual cost of such hydrants, which shall.be under the control of the city council, and the fire department appointed by it.

And the said company shall furnish to said city, from such hydrants, all the water necessary for washing, cleaning, cooling, sprinkling and draining the streets and alleys, avenues, gutters, sidewalks, sewers and public grounds, not to exceed, however, the rate of one hundred thousand gallons daily for each ten thousand in population, and the city may attach to each of such hydrants a faucet, from which water may be drawn by citizens or passers-by, for the purpose of drinking, for persons and animals.

The said company shall, within eighteen months, have at least ten miles of pipe laid down and connected with the works, and shall furnish to the city authorities and the citizens upon the several streets, avenues and public grounds along which their pipes may be laid, such quantity of water as they may desire, and shall have the right to charge the citizens thereof, for such water as may be supplied them, as much and no more than the average price paid therefor in other cities of the United States having efficient water-works, operated by private companies. The city shall pay to said company for the use of the city hydrants, and water therefrom, the yearly rent of two thousand dollars per mile for the first five miles of water mains laid, and fifteen hundred dollars for the second five miles so laid, and for each additional mile such sum as may be agreed upon, and in case of disagreement the price to be fixed by arbitration.

At any time after six months from the date of the ordinance, on giving six months' notice to the president and directors of said water company, the city authorities shall have the right to purchase said water-works, together with all land, fixtures and appurtenances, by paying to said company the amount actually expended in the construction of the works, and the purchase of their grounds necessary for the use thereof, and in case the net receipts from such works shall not amount to ten per cent per annum on the actual cost thereof, then the city shall pay in addition to the cost aforesaid such further sum as, when added to the net receipts of said company, shall be equal to ten per cent on the cost aforesaid.

No city taxes shall be levied or collected on the works of the company, or on the stock issued thereby, or capital necessarily invested and employed in constructing and operating the same, for two years from the date of the ordinance.

On the 9th day of May, 1871, the said company accepted the rights, privileges, franchises and duties granted to and conferred upon it by said ordinance.

The capital stock authorized by said company is three hundred thousand dollars, and is represented by shares of one hundred dollars each, all of which was subscribed for prior to the year 1875, and owned by various persons, who had paid assessments thereon of twenty per cent. Said company borrowed, prior to 1875, two hundred thousand dollars for the completion of said works, and executed deeds of trust on all of its property to secure the same, and such debt is still unpaid, except the interest. The city owned no part of the capital stock, and had no interest in the property of the company, other than is set forth in the ordinance granting said company the right to construct said works. Said company erected its water-works in the years 1871 and 1872, and have since maintained and operated the same, and have furnished to said city water for extinguishing fires, and for other purposes under the contract contained in said ordinance and its acceptance. In extinguishing fires in the city, the firemen attach their hose

directly to the company's pipes, and the water is forced through the same on the fire by the direct action of the company's engines and pumps.

The property of said company consists of eight lots in the city, upon which are located the engines, pumps, boiler rooms, and machinery; and the water-mains or pipes, which are laid down in the streets and attached to the engines and pumps situated upon said lots. All of said property, with the appurtenances, is and was necessary for the successful operation of said water-works.

On the 1st day of January, 1875, said company had more than ten miles of water-mains laid in the streets of the city and attached to its works. For the use of such mains by the city, payment has been made to the company from time to time, as provided in said ordinance. Said company has, from the beginning, furnished water to private consumers for the pecuniary compensations agreed upon between it and the city and the said consumers, and it furnishes no water to either the city or private consumers except for a consideration. The city of Des Moines has never elected to purchase said works as provided in said ordinance. The said city is composed of two townships, Des Moines and Lee, the boundaries of which are co-extensive with the boundary lines of the city. The lots of the water company, and about seven miles of the mains, are situated in Des Moines township, and the remainder in Lee township, and water is furnished to the city for fire and other purposes in both townships as required by the city.

H. H. Rich was elected city assessor for the year 1875. He resided in Lee township and within the city. He assessed the said eight city lots, water-works, and property as the property of the Des Moines Water-Works Company, at the sum of two hundred thousand dollars. There was no other assessment or levy made upon the property of the water company for the year 1875. and no assessment of the stock of said company, nor any part thereof, against the company, the stockholders, or any other person.

The company appeared before the city council, acting as a board of equalization, and filed a petition for the cancellation and correction of the assessment.

After hearing the evidence offered and considering the same, the city council reduced the said assessment to fifteen thousand dollars, and certified the same to the board of supervisors, as required by law.

The water company appealed to the Circuit Court. Upon a hearing said court increased the assessment to sixty thousand dollars. From this order the water company appeals.

*J. S. Polk*, for appellant.

*Smith & Baylies*, for appellees.

ROTHROCK, CH. J.—I. There are no disputed facts in the case. It was submitted in the court below upon the articles of incorporation of appellant, the ordinance of the city, and an agreed statement of facts. To the end that the case may be disposed of as briefly as possible, consistent with an intelligent understanding of the facts, we have not set out the record in full, but have given the substance, so far as necessary to a fair understanding of the questions involved.

It is first insisted by appellant that its property is exempt from taxation, because it is devoted to a public use; the city council having control over the rates the company may charge 1. TAXATION: corporation: the public for water, and having, by its ordinance, municipal corporation. reserved the right in the city to purchase the property at a price equal to its cost, and ten per cent per annum interest thereon. This view we do not believe to be correct. An examination of the articles of incorporation, and the ordinances of the city, clearly demonstrates that appellant is a private incorporation for pecuniary profit, and the use of water furnished by it to the city and its citizens does not render its land, engines, pumps, machinery, mains and appurtenances public property. The same argument would exempt from taxation the property of omnibus lines, whose rates of

fare and mode of doing business are controlled by the ordi-
nances of the city.   The property is no more devoted to a pub-
lic use in one case than the other.   The fact that the city is
furnished water, for which it pays what is presumed to be a
fair consideration, does not change the property from a private
to a public use.   The reservation by the city of the right to
purchase the works does not invest it with any title or right
to the property, or in any sense make it public property, until
it shall elect to purchase.   It is not an executory contract
that the company can enforce by an action for specific per-
formance, nor can it recover damages for its breach.

II.   It is next claimed that the property is exempt from tax-
ation by section 797 of the Code, which exempts "the property of
the United States, and of this State, including agri-
cultural college and school lands, and all prop-
erty leased to the State; the property of a county, township,
city, incorporated town or school district, when devoted entirely
to the public use, and not held for pecuniary profit; public
grounds, including all places for the burial of the dead; *fire
engines, and all implements for extinguishing fires, with the
grounds used exclusively for their buildings and the meetings of
the fire companies.*   \*   \*   \*   \*   \*   \*   \*   \*"

**2.———:———:**
**extinction**
**of fires.**

Conceding that by this section fire engines, and all imple-
ments for extinguishing fires, with the grounds used for their
buildings, etc., are exempt, whether owned by a city or town,
or by an incorporated company or an individual (but which
we do not determine), still we think the works of appellant are
not a fire engine within the meaning of the statute.   A fire
engine is an engine the primary purpose of which is to extin-
guish fires.   The water-works are a great force pump which
supplies the city and its inhabitants with water for all pur-
poses to which it may be applied.   The force is constantly
applied for ordinary use, and for occasional use in times of
fire.

III.   Again it is contended that "if the water-works are

3. ——; ——; subject to taxation, its property, both real and
assessment. personal, all of which is represented by its capital
stock, should be assessed to its stockholders."

Sections 797, 798, 799 and 800 of the Code provide that
certain property therein described shall be exempt from taxa-
tion. The property owned by corporations is not included in
such exemptions. Section 801 provides: "All other prop-
erty, real or personal, is subject to taxation in the manner
directed." Section 807 provides that the property of insur-
ance companies shall be taxed upon its gross premiums.

Section 810 directs that property of railroad companies
shall be taxed upon an assessment made by the executive
council. Other sections prescribe the method of taxing
shares of stock in national banks, and the property of express
and telegraph companies.

Section 813 provides that depreciated bank notes and the
stock of corporations and companies shall be assessed at
their cash value.

Section 821 classifies "stocks or shares in any corporation
or company not required by law to be otherwise listed and
taxed," as personal property.

Section 823 provides: "The assessor shall list every per-
son in his township and assess all the property, personal and
real, therein, *except such as is heretofore specifically exempted*
*   *   *   *   *   *   *."

It is argued that as section 813 directs that the stock of
corporations and companies shall be assessed at its cash
value, no assessment can be made upon the property of the
corporation, because this is the manner directed for the taxa-
tion of the property of corporations, when no other mode is
provided.

This, in our opinion, would be correct, if it were not for the
requirement of section 823, that all property, real and per-
sonal, must be assessed, excepting such as is specifically
exempted. This requires that the real property of corpora-

tions, of the character of appellant, must be assessed, and the requirement is made in as plain terms as if it were so expressly declared. We cannot be aided in the construction of this statute by the cases cited by counsel for appellant, because no one of them construes a statute like this. We are not unmindful, either, of the rule so well stated in Cooley on Taxation, 165, that "when it is once decided that any kind or class of property is liable to be taxed under one provision of the statute, it has been held to follow as a legal conclusion that the legislature could not have intended the same property should be subject to another tax, though there may be general words in the law which would seem to imply that it may be taxed a second time."

The shares of the stockholders of the water company have not been assessed. Whether they can be under a proper construction of the statute, and whether that would be double taxation, we do not determine; but we are united in the belief that the statute plainly and clearly makes the property of the corporation taxable. The rule is that all property is taxable, and no exceptions are allowed except such as come within the specific exemption provided by statute.

IV. We think the land, building, machinery and water-mains are all real estate, and though the whole length of the mains are not laid upon the lots owned by appellant, and extend from Des Moines into Lee township, yet they are appurtenant to the water-works or main structure. The argument that if the mains are real estate, that part which is laid in Lee township should have been there assessed the same as any other real estate, is answered by the fact that their mains acquire their real estate character by being appurtenant to the water-works, and in a conveyance of the works would pass as incident to the principal thing, without any conveyance of the land where they are located. Under such circumstances no assessment need be made except in the place where the water-works and lots are situated.

V. Lastly, it is contended "that the Circuit Court erred in raising the assessment of said water-works from fifteen thousand to sixty thousand dollars."

The Code, § 831, provides: "That any person who may feel aggrieved at anything in the assessment of his property,

5. ———: may appear before said board of equalization, in

equalization:

appeal. person or by agent, at the time and place mentioned in the preceding section, and have the same corrected in such manner as to said board may seem just and equitable, and the assessor shall meet with said board and correct the assessment books as they may direct. Appeals may be taken from all boards of equalization to the Circuit Court of the county where the assessment is made."

The person aggrieved at the assessment of his property may appear and have the assessment corrected. No one has the right to appear before the board of equalization as a party to a proceeding, and have another's assessment corrected or raised. Whether the city or township has the right to appeal from the action of the board of equalization we need not determine. It would seem to be a novel proceeding to allow the same authority which equalizes the assessment to appeal from its own order. However that may be, no appeal was taken by the city in this case. We think, when this appeal was presented to the Circuit Court, the only question to be determined was whether the water-works company had just cause to complain. If it had not, that was the end of the inquiry.

We are reminded by counsel for appellee that in ordinary appeals from justices of the peace the judgment against an appellant may be increased. But this is by virtue of the statute, which provides that in such cases an appeal brings up a cause for trial on the merits and for no other purpose, and that any person aggrieved may appeal from the judgment of a justice. Code, §§ 3575, 3590. The order, so far as it increases the assessment, will be reversed, and, as the cause was submitted upon an agreed statement of facts in

the court below, an order will be made here fixing the value of the property of appellant at fifteen thousand dollars.

REVERSED.

ON REHEARING.

SEEVERS, J.—A rehearing was granted on the petition of the water company, on the alleged ground it had not been expressly determined in the foregoing opinion that the property of corporations organized for pecuniary profit could only be taxed through the shares. This question will now be considered.

The Constitution provides that "the property of all corporations for pecuniary profit shall be subject to taxation the same as that of individuals." Article 8, § 2.

The statute, so to speak, reiterates this constitutional injunction, and there is no doubt but that the statute, as well as the Constitution, declares in emphatic terms that the property of corporations shall be taxed.

It is equally clear the statute provides that the stock of such corporations shall be assessed at its cash value. When

6. ———: assessment: statute. assessed and taxed under this statute the stock must be taxed as the property of the respective owners, and there is no provision making the corporation liable therefor. Whether the statute in express terms declares that both the shares and corporate property shall be taxed we are not called on to determine.

The manner of assessing and taxing corporate property differs, as well it may, in the several States. In some only the stock is taxed. Cooley on Taxation, 273. We have, then, the case where the statute provides that both the shares and property may be taxed. It is our duty to declare both of these statutes valid, if such can be done. Both are equally obligatory, and on precisely the same footing. Neither should be ignored or declared void, unless it is absolutely required by reason of some constitutional provision making it our duty

to so declare.  We do not understand it to be claimed there is any such constitutional provision.

That it would be competent for the General Assembly to adopt either of these modes of taxation must, we think, be conceded. But it has provided that both may be used in the same statute.  Why or by what authority can one be selected and declared in force, and the other not?  We think the only construction that can be adopted is that both are in force, and an assessment and taxation under either is valid; that is to say, the property may be taxed to the corporation, or the shares to the owners.  Whether both may be taxed at the same time we are not called on to determine.

The former opinion is adhered to.