## NEWPORT COUNTY.

NEWPORT ILLUMINATING COMPANY *vs.* THE ASSESSORS OF TAXES OF THE CITY OF NEWPORT.

SAME *vs.* SAME.

A corporation owned a plant comprising a lot of land on Thames street, in the city of Newport, and a building thereon, which contained, besides other machinery, two dynamos propelled by steam power, and a switch-board connecting with a line of wires strung on poles, throughout the city, for the distribution of electricity to consumers. The dynamos and the switch-board were so constructed and attached to the realty as to be removable at pleasure, without physical injury to the freehold.

*Held*, that the dynamos and the switch-board were not included in any of the classes of property enumerated in Pub. Stat. R. I. cap. 42, § 3, but were within the description of other property mentioned in § 11 of the same chapter.

The poles on which the wires were strung were located, some in the public streets, and others on private lands, in both cases by virtue of licenses revocable at any time. In some instances the poles made use of belonged to other parties.

*Held*, that the poles and wires of the corporation were not taxable as part of the Thames street estate as being either fixtures or appurtenances, but were the personal property of the corporation.

*Held*, further, that the poles and wires were not within the provisions of Pub. Stat. R. I. cap. 42, § 11, and hence were not taxable to a business corporation whose capital is divided into shares.

PETITIONS under Pub. Stat. R. I. cap. 43, §§ 15, 16.

*November* 20, 1896.    TILLINGHAST, J.    These are petitions which were filed under the provisions of Pub. Stat. R. I. cap. 43, §§ 15, 16, 17, to obtain relief from the assessment of taxes imposed upon the petitioner's real estate in 1894 and 1895, by the tax assessors of Newport.

The assessments which are in part complained of are in the words and figures following, to wit :

1894.

| Name and Description of Real Estate. | Plat. | Lot. | Amount. | Total. | Amount of Tax. |
|---|---|---|---|---|---|
| Newport Illuminating Company. | | | | | |
| Estate, Thames Street........ | 32 | 76 | $244,983 | | |
| "        Tew's Court ......... | 26 | 37 | 2,340.60 | | |
| "        "        " ...... ... | 26 | 38 | 2,576.40 | $250,000 | $2,500 |

1895.

| Name and Description of Real Estate. | Plat. | Lot. | Amount. | Total. | Amount of Tax. |
|---|---|---|---|---|---|
| Newport Illuminating Company. | | | | | |
| Estate, Thames Street......... | 32 | 76 | $244,983 | | |
| " Tew's Court...... .... | 26 | 37 | 2,340.60 | | |
| " " " .......... | 26 | 38 | 2,576.40 | $250,000 | $2,625 |

The evidence shows that the petitioner brought in to the tax assessors, in both of said years, the "account of its ratable estate" prescribed by Pub. Stat. R. I. cap. 43, §§ 6, 7. The valuation of the estate on "Thames street, lot 76, plat 32," which was placed by the assessors at $244,983, is the main question raised by the petitioner, it being admitted that the assessments of the two lots on Tew's Court are correct. The petitioner, in its account for 1894, placed a valuation upon the land, buildings, boilers, engines, piping and pumps on Thames street of $70,357.26. It also added "dynamos, etc.," at a valuation of $22,796.80 ; "wiring inside station" at a valuation of $3,500 ; "poles and wires" at a valuation of $50,000 ; and it classified these last three items on its account as "real estate." In 1895, its account placed a valuation on the Thames street estate of $90,515.17, but this was exclusive of the poles and wires of which no account was rendered. The dynamos, tools and fixtures, stock in store, book accounts, money on deposit, &c., valued at $48,207.16, were returned as personal estate, while the indebtedness of the company was stated to be $267,141.00, thus exempting said personal estate from taxation. Having in each of said years paid the taxes assessed against it, and being aggrieved by said assessments, it now claims judgment against the city of Newport for $1,746.25 over-tax in 1894, and of $1,621.90 in 1895.

The evidence shows that said Thames street estate consists of land, buildings, engines, boilers, shafting, pulleys, wheels, steam-pipes, water-pipes and water-fixtures attached to the building ; that the petitioner also owns dynamos which are

contained in the building on this estate ; and that in connection therewith it operates a line of poles set in the ground in the public streets and highways, and in some instances on private lands, on which are strung its wires, by means of which power, heat and light are transmitted to consumers. The contention on behalf of the petitioner is that said dynamos and the "wiring inside station" are taxable as personal property, under Pub. Stat. R. I. cap. 42, § 11, hereinafter quoted, and that the "poles and wires" are not real estate within the meaning of the statute, and, although personal property in fact, are not enumerated in said § 11, and hence not taxable at all to the corporation which owns them, under the decisions of this court in *Dunnell Mfg. Co.* v. *Newell*, 15 R. I. 233, and *Rumford Chemical Works* v. *Ray, ante*, pp. 302, 456. The contention of the respondents, on the other hand, is that said dynamos, wiring inside station, and poles and wires, being attached to and operated in connection with the manufactory on said lot, are properly taxable as real estate.

The cases thus presented, then, raise two principal questions for our decision, viz. : (1) Was the petitioner over-taxed ; and (2) Were said dynamos, wiring inside station, and poles and wires properly taxable as real estate ? The first is purely a question of fact, to be determined upon the evidence submitted, while the second is a question of law, and depends mainly upon the construction of the statute as to what constitutes real estate. We will consider the second question first in order.

Pub. Stat. R. I. cap. 42, §§ 1, 2, 3, 10, 11, provide as follows :—

"Section 1. All real estate shall be taxed. in the town where the same is situated.

"Sec. 2. Buildings on leased land, the leases whereof are in writing, and recorded, shall, for the purposes of taxation, be deemed real estate.

"Sec. 3. The main wheel, steam-engine, boilers and shafts, whether upright or horizontal, drums, pulleys, and wheels, attached to any real estate for operating machinery, and all steam-pipes, gas pipes, water pipes, gas-fixtures, and

water fixtures, attached to, and all kettles set and used in any manufacturing establishment, are declared to be real estate when owned by the owners of the real estate to which they are attached."

"SEC. 10. Personal property, for the purposes of taxation, shall be deemed to include all goods, chattels, debts due from solvent persons, money and effects, wherever they may be; all ships or vessels, at home or abroad; all public stocks and securities, except those issued by the government of the United States; all stocks or shares in any bank or banking association; in any turnpike, bridge or other corporation within or without this State, except such as are exempt from taxation by the laws of this State : *Provided*, that no share-holder shall be liable to taxation for shares held in any corporation within this State which in its corporate capacity is taxed within this State for an amount equal to the value of its property, or in any corporation without this State which is, or the shares in which are liable to taxation in the State where such corporation is located : and, *Provided*, that no person shall be liable to taxation on personal property, except upon the surplus of the ratable personal estate owned by him over and above his actual indebtedness.

"SEC. 11. The fixtures enumerated in section three of this chapter; all picking, carding, spooling, drawing, spinning and reeling frames, dressing and warping machines, looms, tools, and machines of all sorts, propelled by steam or water power in any factory, machine shop, print works or manufacturing establishment of any kind, and all live stock and farming tools on farms, shall be taxed to the owner in the town where they are situated, in the same manner as if he resided there."

The evidence shows that the dynamos aforesaid are machines for the generation of electricity, propelled by steam power, and also that they are so constructed and attached to the real estate as to be removable at pleasure by simply unscrewing the bolts by which they are fastened to the plates on which they rest, without doing any physical injury to the freehold. And while it is true, as suggested by the respond-

636 NEWPORT ILLUMIN'G CO. v. ASSESSORS.    [19

ents' counsel, that the statute aforesaid was passed before there had been any great development of electricity, and had special reference to other manufacturing plants, yet we think it is clear that there is no language in said § 3 which will warrant us in holding that dynamos are properly included therein. On the other hand, we think it is very clear that they are included in the provisions of § 11 aforesaid, under the head of "machines of all sorts propelled by steam or water power," and hence should be classed as personal property for the purposes of taxation, under the decisions of this court in *Steere* v. *Walling*, 7 R. I. 317, and *Dunnell Mfg. Co.* v. *Newell*, 15 R. I. 233.

The item "wiring inside station" should also be classed as personal property. It consists of a machine known as a "switch-board," with wires connected therewith, and is so attached to the realty that it can readily be removed without any physical injury thereto. It clearly does not fall within the description of any of the property mentioned in § 3 aforesaid, but does fall within that of § 11.

As to the poles and wires which are included by the tax assessors in the assessment of the petitioner's Thames street estate, the evidence shows that they are used by the petitioner for the conducting of electricity to consumers in the city of Newport ; that these wires issue out of the petitioner's building on said Thames street estate, and are then strung on poles with cross-arms attached, a part of which poles are located in the public highways of said city, and a part thereof on the lands of private individuals by virtue of parol licenses which are revocable at the will of the owners of said lands respectively. The evidence also shows that the petitioner makes use of certain poles belonging to the Providence Telephone Company, of certain others belonging to the Newport Street Railway Company, of certain others of the Western Union Telegraph Company, and of certain others belonging to the Fire Alarm Telegraph of the city of Newport. It also shows that some of the wires of said Western Union Telegraph Company, of said Providence Telephone Company, and of said Fire Alarm Telegraph of the city of Newport,

are carried or supported on a part of the poles erected by the petitioner, both on private lands and on said public high-ways, and that the placing by the petitioner of its poles on the public highways is by virtue of a provision in its charter, and an ordinance of the city of Newport granting permission to erect and maintain said poles and wires subject to the order and control of the chief engineer of the fire department, and also subject to the right of the city to remove the same at any time without notice. Under the decision of this court in *Providence Gas Co.* v. *Thurber*, 2 R. I. 15, it is clear that said poles and wires are not fixtures as to said lot on Thames street, and that, therefore, they cannot properly be taxed as a part of said estate unless they are an appurtenance thereof. It was held in the case just cited that a personal chattel does not become a fixture, so as to be a part of the real estate, unless it be so affixed to the freehold as to be incapable of severance from it without physical injury to the freehold. And it is not claimed, nor could it be reasonably claimed, that any physical injury would result to the freehold in question by the removal of said poles and wires. Indeed, they are not *on* said estate at all, except that a connecting wire runs therefrom to the poles in the street, and hence cannot be held to be fixtures which, in order to be such, must be fastened, fixed or set into the land itself, or into some such erection as is unquestionably a part of the realty. Bull. N. P. 34.

The only other question which arises, then, is whether said poles and wires can be said to be appurtenant to said estate, and hence taxable as a part thereof. Appurtenances are defined as "things belonging to another thing as principal, and which pass as incident to the principal thing." Another definition of an appurtenance is, "a thing used with and related to, or dependent upon another thing *more worthy*, and agreeing in its nature and quality with the thing whereunto it is appendant or appurtenant." 3 Washb. Real Prop. * 626–627. "The word 'appurtenances' has a technical signification, and, when strictly considered, is employed in leases for the purpose of including any easement

or servitudes used or enjoyed with the demised premises.
. . . . . When the term is thus used, in order to constitute
an appurtenance there must exist a propriety of relation
between the principal or dominant subject and the accessory
or adjunct, which is to be ascertained by considering whether
they so agree in nature and quality as to be capable of union
without incongruity." *Riddle* v. *Littlefield*, 53 N. H. 503.
The term as used in conveyances passes nothing but the land
and such things as belong thereto and are part of the realty.
*Ottumwa Woolen Mill Co.* v. *Hawley*, 44 Iowa, 57.    And
all that can be claimed as embraced in the word "appur-
tenances" in a conveyance of land are the easements and
servitudes necessary to the enjoyment of the land conveyed.
*Woodhull* v. *Rosenthal*, 61 N. Y. 382.    See also *Green* v.
*Collins*, 86 N. Y. 246 ; *Pickering* v. *Stapler*, 5 Serg. & R.
107 ; 3 Salk. 40 ; *Hall* v. *Lawrence*, 2 R. I. 218 ; 2 Kent's
Com. * 345, note *a*.

Under the definitions thus given we do not think that the
poles and wires in question can be said to be appurtenant to
the estate in question.    For, while it is true that they are
used in connection with said estate, yet they are not depend-
ent upon it ; nor do they agree with the nature or quality
thereof.    In short, they are simply articles of personal prop-
erty belonging to the petitioner, situated in part in the
streets of Newport and in part on private lands, and used for
the time being for the purpose aforesaid.    And, while it is
true that said poles and wires, in so far as they are located
in said streets, are there by virtue of a provision in the char-
ter of said company and the consent of the city council, and
in all probability perhaps will be permitted to remain sub-
stantially as they now are for an indefinite period, yet we
cannot ignore the very important fact that the permission
given by the city council, or by any officer or agent of said
city, to erect and maintain said poles and wires, is liable to
be revoked in whole or in part, at any time, and also that
said city has expressly reserved the right, in connection with
the granting of said permission, itself to remove said poles
and wires without any notice to the company except such, if

any, as the statutes of the State may require.   The corporation thus being without any vested rights in the streets, it cannot be said that simply because said poles and wires are located therein they are appurtenant to the lot in question. What we have thus said about the poles and wires in the streets applies, of course, and *a fortiori*, to those on private lands, and also to that part of the wires supported by poles belonging to other corporations.

An examination of those cases which hold that water pipes and gas pipes laid in public highways, and telegraph, telephone and electric lighting poles and wires when located in public highways, are either real estate by themselves, or fixtures or appurtenances as related to the land on which the plant is established, shows that in most of said cases, and probably in all, the corporations owning and operating said pipes, or poles and wires, as the case may be, have an easement in fee in the highways where they are located, by virtue of their charters and the ordinances of the cities in which they are located ; and hence said cases are not in point here.

See *Fechet* v. *Drake*, 2 Amer. Electrical Cas. 331 ; *Hughes* v. *Lambertville Electric Light, Heat and Power Co.*, 5 ib. 626 ; *Badger Lumber Co.* v. *Marion Water Supply, Electric Light & Power Co.*, 4 ib. 551 ; *Western Union Telegraph Co.* v. *Tennessee*, 1 ib. 326 ; *Philbrick* v. *Ewing*, 97 Mass. 133 ; *Appeal of Des Moines Water Co.*, 48 Iowa, 324 ; *Capital City Gas Light Co.* v. *Charter Oak Ins. Co.*, 51 Iowa, 31 ; Law relating to Electricity, Croswell, § 227, and cases cited in note.

We are aware that by holding said poles and wires to be personal property merely, is in effect to hold that they are not taxable at all, when owned by a corporation, as they are in this case, except as they are taxed to the shareholders, they not being within the description of property enumerated in said § 11.   But, although reluctant to come to the conclusion that they are not appurtenant to the real estate, yet we are obliged to administer the law as we find it, no matter what the result may be, and leave it to the General Assembly to make such changes therein, if any, as they may deem

advisable, and for the interest of the State in the way of fairly distributing the burdens thereof.   Whether or not the city may.not properly obtain a revenue from the petitioner by way of charging a rental for the use of that part of the public streets occupied by said poles and wires, as has been done in other States, (*See St. Louis* v. *Western Union Tel. Co.*, 148 U. S. 92 ; 149 U. S. 465 ; *Lancaster* v. *Edison Electric Illuminating Co.*, 2 Amer. Electrical Cas. 116 ; Thompson, Law of Electricity, § 46 ; 27 Amer. Law Reg. (N. S.) 426, n. ; *Mutual Union Tel. Co.* v. *Chicago*, 16 Fed. Rep. 309 ;) we are not called upon to decide, but we do not think that they are taxable to the corporation owning them, either as real or personal estate.

As to the question of over-taxation.   '

We think the Thames street estate was overtaxed.   The value fixed upon the land proper, by the petitioner in its account rendered as aforesaid in 1894, was 18 cents per square foot, which was the assessed value thereof for the previous year.   The assessors, however, raised the valuation of the land to 25 cents per square foot, although the neighboring assessments remained the same, and reduced the value of the improvements to correspond.   That is to say : In 1893 the land was valued at 18 cents per square foot and the improvements at $238,825, total $244,983, while in 1894 the land was valued at 25 cents per square foot, and yet the total valuation remained as it was, the improvements being valued at so much less.   It seems that the petitioner had complained of the assessment of 1893 as being excessive, and had asked for a rebate ; and Mr. James G. Topham, one of the assessors, in answer to the question as to what reasons influenced him in raising the tax from 18 cents in 1893 to 25 cents in 1894, says that the increase was made for the purpose of satisfying the company, who had asked for a rebate ; that the assessors were doing as near right as they could.   He also testifies, however, that there was no particular difference in the market value of the land between 1893 and 1894. The reason which he gives for reducing the valuation of the buildings and improvements in an amount equal to the in-

crease in the valuation of the land, thereby reaching precisely the same result as that of 1893, is not entirely clear, but practically comes to this : That the assessors thought that the tax as a whole was not too high, and that they would therefore maintain it in its entirety by reducing the valuation of the improvements and increasing the valuation of the land.

Mr. Andrew K. Quinn, also one of the assessors, gives as his reason for the increase in the valuation of the land, the fact that it is now bringing in a revenue, whereas, when the valuation was less it was unproductive property ; while his reason for increasing the valuation of this particular lot, while making no change in the valuation of adjoining lands, is that the assessors have not yet had a chance to make a revaluation of the entire section, and that the probability is that when they made a revaluation thereof it will all be increased. His reason for reducing the value of the buildings at the time of the increase in that of the land was for the purpose of obtaining a round number as the result. It may be stated in this connection that the "round number" here referred to is the total amount of the property for which the petitioner was taxed in Newport, in each of said years, viz. : $250,000. Mr. Quinn frankly admits that he was entirely ignorant of the value of electrical plants, and that he relied mainly on the sworn statement of the directors of the company filed with the city clerk, (the usual statement required of manufacturing corporations under the statute,) together with the valuation put upon a somewhat similar plant in Massachusetts by the local assessors there. He also testifies that the valuation of the land was too low in 1893, that it was by reason of an oversight that it was not increased, and that 25 cents per square foot is a fair valuation thereof. He further testifies that the value of the buildings was reduced as aforesaid merely to obtain a round number.

John H. Berger, an electrical engineer and contractor, gave his opinion as to the value of the plant, from what he had been told of its size and capacity ; and Garrett M. Kirwin, a mason and builder, testified that in his opinion the

cost of constructing the buildings would not be less than $50,000. The petitioner, on the other hand, offered the testimony of George P. Magner, the treasurer of the company, to the effect that the detailed accounts brought in by him as aforesaid contained an exact and true statement of the actual value of the fixtures, machinery and improvements of every kind, excepting the buildings, on said estate, and that as to the land and buildings he assumed the value placed thereon in 1893 by the respondents to be correct, and therefore adopted the same. His testimony, which was very full and convincing, shows that a careful appraisal of each item of property connected with said plant had been made, the original bills of a large part thereof being produced to verify his statement, and that he, being in a position which enabled him to determine with a good degree of certainty as to the value of each of the appliances in said establishment, and testifying with evident candor and fairness, is entitled to credence as to the value of said property, without in any way reflecting upon the honesty or official conduct of the respondents. For, while they could only judge of the value of said property by such general information as they were able to obtain, he based his judgment upon particular knowledge and exact data, and we see no reason to doubt that the account brought in by him in behalf of the corporation was such an one as the statute requires.

As to the value of the real estate, Alex. E. Taylor, a real estate expert familiar with the values of property on Thames street, called by the petitioner, testified that while he could not say that the land in the immediate neighborhood of petitioner's estate had any market value, yet he was not aware of anything that could have altered the value of said estate from 1893 to 1894, and that it is not worth any more now than it was four or five years ago.

After a careful consideration of all the evidence offered as to the fair cash value of the property in question, we think it preponderates in favor of the petitioner, and we are therefore of the opinion that it is entitled to recover the amount of the tax paid by it on said Thames street estate in excess

of the valuation placed thereon in its accounts rendered to the assessors as aforesaid ; that it is also entitled to recover the amount paid by way of a tax on its poles and wires in 1894, valued at $50,000 ; and that the dynamos and wiring inside station having been improperly taxed as real estate, and it appearing that the corporation owed debts in excess of the value thereof, even if said articles had been taxed as personal property, it is also entitled to recover the amount assessed thereon.

*Samuel R. Honey,* for petitioner.

*William P. Sheffield, Jr.,* for respondents.