---

### Jenkins *v.* McTigue.

#### (*Circuit Court, N. D. Iowa, W. D.*   1884.)

1. TAX DEED—ASSESSMENT—LISTING—LEVY—IOWA CODE, § 897.
   A tax deed is *prima facie* evidence of the fact of assessment, listing, and levy, but conclusive evidence that the manner thereof accords with the law.

2. SAME—EVIDENCE—BURDEN OF PROOF.
   The introduction of a tax deed in evidence casts upon the party objecting to its validity the burden of proving that in fact no legal assessment has been made.

3. SAME—DESCRIPTION OF LANDS.
   A description of land in the assessor's book and the tax-list by the common abbreviations used to designate government subdivisions of land, sufficiently identifies it.

4. SAME—VALUATION—OMISSION OF DOLLAR-MARK.
   The omission of words or marks to indicate dollars and cents as the amount of assessment on the assessor's and treasurer's books, when the entries are so made that the omission does not tend to mislead the owner of the land assessed, will not render the assessment void.

5. SAME—ENTRY OF LANDS TO UNKNOWN OWNERS.
   The entry of lands on the assessor's book as assessed to "owners unknown" forms part of the *manner* in which such lands are to be listed and assessed, and the treasurer's deed is conclusive upon that subject under the provisions of section 897 of Code of Iowa.

6. SAME—DUTY OF TAX-PAYER—CLERICAL ERRORS.
   It is the duty of a tax-payer to see that his property is properly listed and assessed, and if there are clerical errors to have them corrected, and, failing in this, he should not be allowed to remain quiet for years and then seek to escape payment of his share of the taxes by relying on some defect that has worked him no prejudice. When a defect or omission is one of substance a different rule will apply.

At Law.

*Zane & Hellsall*, for plaintiff.

*Joy, Wright & Hudson*, for defendant.

SHIRAS, J. In this cause plaintiff seeks to recover possession of the E. ½ of the N. W. ¼ of section 14, township 89 N., range 36 W. of fifth P. M., situated in Sac county, Iowa, claiming to be the owner thereof in fee-simple, and as evidence of his title exhibits a patent for the land from the United States to Charles S. Tewksbury, an adjudication in bankruptcy in the United States district court for the Northern district of Illinois declaring Tewksbury a bankrupt, and a deed from

Edward R. Richards, assignee of Tewksbury, to plaintiff, conveying the land in question. The defendant admits that he is in possession of the land, and claims title thereto under a tax sale of said premises made on the fifth day of October, 1874, for the delinquent taxes for the year 1873. The evidence shows that the treasurer of Sac county sold the land on the day named to D. Carr Early, and on the twenty-first of November, 1877, a deed was executed to said Early by the treasurer. Early subsequently sold the land to the Sac County Bank, of whom the defendant purchased it. The rights of the parties are dependent on the validity of the tax sale and deed made in pursuance thereof. On part of plaintiff it is claimed that the sale made by the treasurer of Sac county was of no effect, because the land was not assessed or listed for assessment for the year 1873.

Under the provisions of section 897 of the Code of Iowa, the treasurer's deed is presumptive evidence of the fact that the property sold for taxes has been listed and assessed, and the introduction of the deed in proper form casts upon the other party the burden of proving that in fact no legal assessment has been made. The assessor's book for Douglas township, Sac county, in which the land is situated, together with the tax-list, as certified by the county auditor, have been introduced in evidence, from which it appears that the assessor of the township, in making the assessment for the year 1873, first entered upon his books all the lands assessed against known owners, and then entered consecutively the lands not thus assessed. The assessor's book is in the usual form, with a printed heading for each page, and ruled into columns, in which the entries appear as follows:

| Owner's Name. | Part of Section. | Section. | Township. | Range. | Acres. | Value per Acre. | Value of Land. |
|---|---|---|---|---|---|---|---|
|  | * * * * * * NE. NE. | 14 | 89 | 36 | 40 | 4 | 160 |
|  | * * * * * * NE. NW. | " | " | *" | " | " | " |
|  | NW. NW. | " | " | " | " | " | " |
|  | SW. NW. | " | " | " | " | " | " |
|  | SE. NW. | " | " | " | " | " | " |

Upon the tax-list the lands are entered in the same way, with the addition of the amount of tax levied upon each 40 which is entered in a column headed "consolidated tax." In the back part of this book is found a summary of the different taxes levied, such as state tax, county tax, county school tax, etc., giving the amounts of each, and so, under the name of each township, appears a summary of the taxes levied for township purposes. In none of these entries is the dollar or cent mark used. Following these entries is the tax-warrant, addressed to the treasurer, and reciting that—

"You are hereby required and authorized to collect the foregoing taxes for the year A. D. 1873, as shown by the foregoing tax-list, amounting in the aggregate to seventy-three thousand four hundred and thirty-seven and 52-100 dollars, ($73,437.52-100,) and this shall be your warrant.

"By order of board of supervisors," etc.

On behalf of plaintiff it is claimed that the assessment of property is in the nature of a jurisdictional question lying at the foundation of the right to sell lands for taxes, and that to sustain a tax sale and deed, made in pursuance thereof, it must appear that there was a proper assessment and levy of a tax, and that the first essential thereto is a proper and sufficient description of the land, when that is the subject of taxation.

The objection urged in the present instance to the description of the land is that in the assessor's book and the tax-list the lands are described as the N. E. N. W. section 18, etc., it being claimed that the court cannot know that thereby is meant the north-east quarter of north-west quarter of section 18. As a general rule, a description which identifies the land, and is not calculated to mislead the owner, is sufficient, even though in some particulars it may be deficient. In this case the assessor's book and the tax-list both show that each particular description includes a 40-acre tract, which is described under the heading "Part of Section" as the N. E. N. W. or the S. E. N. W. of section 18, etc. It is clear that in listing these lands for assessment the assessor intended to use the government subdivisions, for this is expressly shown by the heading over each page in the book. These abbreviations are in common use, and it is not possible that the owner could have been misled by reason of the description used by the assessor in describing these lands. Taking the entire description, it would, according to common understanding, clearly define and point out the particular 40 acres intended to be assessed, and greater accuracy than this is not demanded under the provisions of the Iowa statute. This exact point, as we understand it, has been authoritatively settled by the supreme court of Iowa. Thus, in *Judd* v. *Anderson*, 51 Iowa, 345, S. C. 1 N. W. Rep. 677, the question was as to the validity of an assessment and sale made under the description of the "E. $\frac{2}{3}$ S. $\frac{1}{2}$ S. $\frac{1}{2}$ N. E. N. W. 19, 75, 15," and the court held that "this assessment clearly authorized the sale of a tract of land in the S. E. corner of the N. E. $\frac{1}{4}$ of the N. W. $\frac{1}{4}$ of section 19," etc. It follows, therefore, that the objection to the description of the property, as found upon the assessor's book and the tax-list is not well taken.

Plaintiff further claims that the assessment in question is void by reason of the fact that there is no word or mark prefixed to the figures representing the value of the property upon the assessor's and treasurer's books, and that these figures are therefore literally meaningless, and hence that there has not been an assessment of the realty. In support of this proposition are cited the cases of *Lawrence* v. *Fast*, 20 Ill. 338; *Lane* v. *Bommelman*, 21 Ill. 147; *Braly* v. *Seaman*, 30

Cal. 610; *People* v. *Savings Union*, 31 Cal. 132, and other decisions based thereon. In Illinois it is held that the omission of a word or mark to indicate that dollars or cents are meant is fatal to the validity of a judgment rendered under the statute of that state, ascertaining the amount of taxes levied. In *Chickering* v. *Faile*, 38 Ill. 342, it is stated that this ruling is confined solely to the statutory judgment required to be entered, and is not to be applied to the valuation made by the assessor; and that, as applied to the judgment, it was so ruled by reason of the requirement of the statute that the judgment should fix the amount due. In the leading case in California, to-wit, *People* v. *Savings Union*, 31 Cal. 132, suit was brought to recover judgment for the amount of the taxes, and the decision was that the omission of the dollar-mark rendered the assessment void. Each case, as it arises, must, of necessity, be largely dependent upon the special facts upon which it is based, and the object and purpose of the proceeding.

In the case now before the court the plaintiff is in reality seeking to maintain the proposition that the realty he owned in Sac county, in 1873, should be freed from all taxation for that year, because of the omission of the dollar-mark as a prefix. It is not shown or claimed that the omission of the dollar-mark in any way actually misled the plaintiff, or prevented him from paying whatever sum was properly assessed upon his property. There is nothing in the evidence which would even tend to support the idea that if the dollar-mark had been prefixed to the figures found in the columns containing the valuation and amount of tax assessed on these lands, the plaintiff would have paid such sums. The evidence shows that the assessor, the board of equalization, the supervisors, and county treasurer all acted in good faith in treating these figures as indicating dollars and cents. The books show that the board of equalization changed the valuation of the lands with others, reducing the total value of each 40 from $160 to $153. These figures are found in the columns headed "Value of Land." Upon the latter valuation, as found in the tax-list, there is calculated the amount of consolidated tax due upon each 40, the rate of taxation being 44 mills, as appears from the heading on each page. The amount of tax is carried out in the proper column, which is divided by lines such as are in ordinary use for writing therein dollars and cents, and the figures are written in the columns that they would be if the purpose was to indicate the sum of $6.73. As already stated, the aggregate amounts of the several classes of taxes are brought together on pages 288 and 289 of the tax-list in the following form:

DOUGLAS TOWNSHIP.

| | |
|---|---:|
| Teachers' tax, | 2,470 14 |
| School-house tax, | 494 03 |
| Contingent tax, | 658 59 |
| Road tax, | 633 39 |

The Code of Iowa, § 2075, declares "that the money of account of this state is the dollar, cent, mill, and all public accounts, and the proceedings of all courts in relation to money, shall be kept and expressed in money of the above denomination." Knowing, therefore, that the public accounts of the state are required to be kept under the denomination of dollars, cents, and mills, would it not be apparent to even a casual observer that these several amounts must mean dollars and cents.

In the argument it was urged that it could not be known whether these several sums meant dollars and cents, or cents and mills. Bearing in mind that the headings of the several pages of the assessors' book and tax-list clearly show that these figures are intended to express values in money, and that by statute it is required that in these public records values shall be expressed under the denomination of dollars, cents, and mills, and assuming that the county officials had knowledge enough to write down the figures in the mode. usually employed in expressing values by these denominations, no one could be in doubt as to the true intent and meaning of the sums entered upon these books.

In the warrant addressed to the treasurer which is found on pages 288 and 289 of the tax-list is set forth the total amount of the taxes, the same being written out, as well as stated in figures with the dollar prefix, which fact shows clearly that the board of supervisors recognized these figures as representing dollars and cents, and each tax-payer could, by an examination of the assessor's book and the tax-list, satisfy himself of the true meaning of these figures. It is the duty of the tax-payer to see that his property is properly listed and assessed, and if there are clerical errors or omissions in the assessment or other proceedings, he can readily have the same corrected, if he so wishes. Failing in so doing, he should not be permitted to remain quiet for years and then seek to escape payment of his share of the taxes by reliance on some defect which has worked him no prejudice. Of course, if the defect or omission is one of substance then a different rule will apply.

It is also claimed that the omission of the words "owners unknown," from the head of the page in the assessor's book, invalidates the assessment and sale of the property. Section 826 provides that "when the name of the owner of any real estate is unknown, it shall be lawful to assess such real estate without connecting therewith any name, but inscribing at the head of the page the words 'owners unknown,' etc. The evidence in this case shows that the assessor did, in fact, enter the lands in question upon his book without connecting therewith any name, did fix the value of the land for purposes of taxation, and that the lands, with the proper valuation, were entered upon the tax-list and the amount of the various taxes was properly entered therein. Without considering the question whether the provision of the section directing the entry of the words "owners un-

known" at the head of the page is not to be deemed merely directory, it seems clear that such entry forms part of the *manner* in which the property of unknown owners is to be listed and assessed, and that, consequently, the treasurer's deed is conclusive upon that subject, under the provisions of section 897 of the Code of Iowa. Thus, in *Robinson* v. *First Nat. Bank*, 48 Iowa, 354, it is ruled that—

"The tax deed is conclusive evidence of the regularity of the manner of the assessment, listing, and levy of taxes. It is *prima facie* evidence of the fact of assessment, listing, and levy, but conclusive evidence that the manner thereof accords with the law. * * * The objection admits these acts, but is based upon the ground that they are not regularly performed, in that the description of the property upon the tax-list was not sufficient, and that the valuation and tax upon several separate tracts were in gross. These are matters that pertain to the manner of assessment, listing, and levying, and are regarded by the law as conclusively established by the deeds."

As none of the objections to the validity of the treasurer's deed, and the assessment and sale upon which it is based, are sustained, it follows that the defendant has made out a good title thereunder to the land in question, and that, consequently, plaintiff fails in this action.

Judgment will therefore be entered dismissing the action at cost of plaintiff.