[No. 3877. Decided April 11, 1902.]

EUREKA DISTRICT GOLD MINING COMPANY, *Appellant,* v. FERRY COUNTY *et al., Respondents.*

MINES AND MINERALS — TAXATION — DESCRIPTION OF PROPERTY.

A description of mining property upon the assessment list for taxation as "Eureka District Gold Mining Company, Survey 420," cannot be regarded as too vague and uncertain for purposes of identification, where that is the description contained in the patent subsequently issued for the property, which was a group of several mining claims, but treated by its owners as a consolidated claim.

SAME — ACTION TO ENJOIN TAX — PLEADING.

An allegation in the answer of defendants not denied in plaintiff's reply, that the description of mining property em-

ployed by the assessor was the same as that contained in the patent therefor, taken in connection with evidence that the assessor procured from the land office a list of all claims for which receipt had issued and. used such description in listing plaintiff's property, is sufficient to establish the finding that the description corresponds to that in the United States patent for the property, although patent therefor was not in fact issued until some six months subsequent to the date of assessment.

SAME.

The term "Eureka District Gold Mining Company Survey" is sufficient to identify property as being the subject of a government mineral survey, when that description was applied to the survey of record in the land office and afterwards inserted in the patent, which conveyed a number of claims as having been grouped under one survey.

SAME — METHOD OF ASSESSMENT.

Under Bal. Code, § 1699, which provides that the assessor shall list all property according to the largest legal subdivision, as near as practicable, unless otherwise ordered by the board of county commissioners, it was not error to list a group of mining claims as a consolidated claim, according to the government description, when no order had been made by said board directing the property to be listed by smaller legal subdivisions.

SAME — SEGREGATION OF REAL AND PERSONAL PROPERTY.

Where the owner of mining property, when before the board of equalization, made no demand for a segregation of the personal property from the real estate assessment, it cannot subsequently, in an action to enjoin the collection of the tax, be heard to say that a substantial right affecting the validity of the tax had been invaded.

SAME — INCLUSION OF IMPROVEMENTS IN VALUATION OF REALTY.

Under Bal. Code, § 1698, which provides that "in valuing any real property on which there is a coal or other mine. or stone or other quarry, the same shall be valued at such a price as such property, including the mine or quarry, would sell at a fair, voluntary sale for cash," it was proper for the assessor to value as part of the real estate of mining property improvements thereon consisting of tunnels running through the land for mining purposes and buildings upon the land for use in connection with the operation of the mine.

SAME — REQUIREMENTS OF CONSTITUTION.

Such provision is not a violation of art. 7, §§ 2, 3, of the constitution, which require uniformity in the rate of taxation, and that the same methods shall be employed for assessing corporate property as are provided for assessing individual property.

SAME — UNIFORM TAXATION.

The fact that Bal. Code, § 1698, makes the rule for valuing mining property at the price which it would bring at "a fair, voluntary sale for cash," while the rule for other property is stated to be the "value at which the property would be taken in payment of a just debt from a solvent debtor," would not violate the constitutional requirement (art. 7, § 2) of uniformity in the rate of taxation on all property according to its value.

SAME — ASSESSOR'S METHOD OF COMPUTING VALUATION.

The method employed by the assessor in getting at the valuation of mining property fixed by him in his assessment is immaterial, if in fact the conclusion arrived at was the result of his honest judgment as to its value, considered with reference to the property itself, after an examination thereof.

SAME — PROPERTY OMITTED FROM ASSESSMENT — EFFECT.

The omission by the assessor of about 3,000 mining claims in the county from his assessment, would not invalidate his assessment of other mining property, even if such omission arose from a misapprehension of the law or from a mistake of fact.

Appeal from Superior Court, Ferry County.—Hon. CHARLES H. NEAL, Judge. Affirmed.

*Hand, Taylor & Graves,* for appellant.

*M. E. Jesseph,* Prosecuting Attorney, and *L. C. Jesseph,* for respondents.

The opinion of the court was delivered by

HADLEY, J.—This action was brought to restrain the county of Ferry and the treasurer thereof from collecting a certain tax levied for the year 1899, which is alleged to be excessive. It is also alleged that the method of as-

sessment was such as renders the same invalid, and that the tax should not be enforced. A tender of $417.64 was, however, made to the county treasurer on condition that it should be accepted in full discharge of the tax levied for said year. The tender was refused, and was renewed at the time of the trial of this cause. The whole tax, as equalized by the board of equalization, amounted to $2,600. The property assessed is mining property. It is sought to restrain the collection of any sum in excess of the amount of the aforesaid tender. The trial court, upon a final hearing, held that the assessment for the full amount was lawfully made, and was not excessive, declined to issue a restraining order, and entered judgment accordingly. From such judgment this appeal was taken.

It is urged that the description of the property assessed, as it appears upon the tax rolls, is too vague and uncertain to identify appellant's property, and is therefore not sufficient for the purpose of taxation. The valuation under the assessment was made as of the 1st day of March, 1899, and the appellant, in its complaint, alleges that on that date it was the owner of the possessory right to certain mining claims designated as follows: "Mud Lake," "Mammoth," "Little Cove," "Knob Hill," and "Gold Dollar," making, as it alleges, "a consolidated claim located upon unsurveyed public land . . . in Ferry county, state of Washington." It is also alleged that in September, 1899, appellant received from the United States a patent conveying to it title in fee to said claims and the ground covered thereby. It thus appears from appellant's own allegation that it treated the claims as a consolidated group, and procured its patent for them as such. The court found that the assessor listed the prop-

erty as the "Eureka District Gold Mining Company, Survey 420," and further found that such is the description used in the United States patent for said group of claims as issued to appellant's grantors. Appellant urges that the said finding is not supported by the evidence. It is, however, alleged in the answer that the description is in accordance with that in the patent, and this allegation is not denied in the reply. The assessor also testified that he procured from the United States land office at Spokane a list of all claims for which receipt had issued, and that he used the description thus procured in carrying out the list against appellant's property. We find no evidence to the effect that the claims were not so grouped and described at the land office, and from the pleadings and evidence we think the finding of the court is sustained. Appellant not only admits, but alleges, that it is the owner of all the claims, and that it holds them as a consolidated mining claim. The names originally given to the several claims are not used on the assessment list, but opposite the above description the number of acres covered by the whole is set down, and also the value placed thereon by the assessor. There is no evidence that any other survey of these lands has ever been made by the government. It is asserted in respondents' brief that the lands lie within the Colville Indian Reservation, that said reservation was open only to mineral entry, and that mineral surveys were the only ones to be considered by the assessor. But there is no evidence in the record upon that subject. It does sufficiently appear, however, that there was a government survey establishing the description used by the assessor. Appellant urges that the description does not show that it was a mineral survey. We think the words "Eureka District Gold Mining Company Survey" are

sufficient to identify it as such. The description being that used in the survey authorized by the United States then of record in the land office and afterwards inserted in the patent, which conveyed the claims as having been grouped under one survey, we think was sufficiently definite.

"In listing the land it must be described with particularity sufficient to afford the owner the means of identification, and not to mislead him." Cooley, Taxation (2d ed.), p. 404.

See, also, *Jenkins v. McTigue*, 22 Fed. 148. We think this description comes within the above rule.

We do not understand appellant to complain that the several claims so grouped were not separately valued as such. There is no evidence that any such request or demand was made of the board of equalization before whom appellant, by its representative, appeared. Complaint is made that the lands, improvements, and personal property were not separately valued, but we understand that this objection is intended to reach merely the question whether a segregation of the classes of property should have been made, and that it is not intended to apply to what may be claimed to be separate parcels of real estate. But, in any event, if the latter is intended, this court has refused to declare an assessment void where farm lands belonging to one person had been assessed in a body and the parcels not separately valued. *Pacific County ex rel. Lockwood v. Ellis*, 12 Wash. 108, 111 (40 Pac. 632). It had been previously held in *Lockwood v. Roys*, 11 Wash. 697 (40 Pac. 346), that an assessment of a number of platted lots, many of which were not contiguous, was void because they had been assessed as a whole, and not separately valued. But in *Pacific County v. Ellis, supra,* it was held

that in the case of contiguous farm lands belonging to the same owner the reason of the rule laid down in the other case does not exist.

"But in the case of unimproved lands the general understanding appears to be that an assessment as one parcel of that which was purchased by the owner as such is sufficient, though by the government survey it was subdivided, for the purpose of being offered for sale, into several parcels, each of which might have been sold separately. Thus, an assessment of the whole south half of a section has been held good, though it contained four distinct eighty-acre lots." Cooley, Taxation (2d ed.), 402; citing cases.

Section 1699, Bal. Code, provides that the assessor shall list all property according to the largest legal subdivision, as near as practicable; and that, when several tracts shall be owned by one person or corporation, he shall group such tracts as far as practicable; but that the board of county commissioners may, by order, direct that the property be listed numerically according to the smallest platted or government subdivision, in which case the separate value of each subdivision shall be carried out on the list. It does not appear that the county commissioners of Ferry county made such an order, and, as far as appears, the assessor listed the property, not only according to the largest, but also according to the only legal subdivision known under a government survey of this property.

Referring now to the objection that the lands, improvements, and personal property should have been valued separately, we find that by stipulation evidence was taken at one time, to be used as far as applicable in this case, and also in another against the same defendants, who are respondents here. The other case involved questions similar to those presented here. The evidence thus taken

is not clear as to what amount of personal property this appellant possessed at the time of the assessment. As we read the testimony upon that subject, it seems to have been directed more particularly to a valuation of personal property belonging to the company complaining in the other case. If the testimony was intended to fix a valuation upon the personal property of both companies, we are unable to segregate it and find the value of one separately from the other. In any event, the amount, as shown by the testimony, was inconsiderable, it being fixed at $1,000, together with machinery valued at $1,500. Passing the question whether the latter item should be classed as personalty, the assessor seems to have made an assessment of realty alone, and it is so specified upon his list. Personal property items are not named as forming any part of the valuation. We think it reasonably clear from the evidence that the assessor meant to place a value upon the mine covered by appellant's land, and that the items of personal property were so inconsiderable in amount, as compared with the value of the real estate, that they really did not enter into the estimate of valuation. But, even if they did, the property all belonged to appellant. It is liable for the tax upon both classes of property; and, since no demand for a segregation of the personal from the real estate assessment was made when appellant was before the board of equalization, we think, under the circumstances, it should not now be heard to say that a substantial right affecting the validity of the tax has been invaded.

It is next urged that the improvements should have been valued separately from the land. The principal improvements consisted of tunnels running through the land for mining purposes. Manifestly, from the nature of

these, they could not be valued separately, but the land should be valued as a mine with these tunnels included, according to the provision of § 1698, Bal. Code, which is as follows:

"In valuing any real property on which there is a coal or other mine, or stone or other quarry, the same shall be valued at such a price as such property, including the mine or quarry, would sell at a fair, voluntary sale for cash."

Other improvements consisted of buildings upon the lands for use in connection with the operation of the mine, and we think a reasonable construction of the statutory language above quoted makes such buildings a part of the mining property, and that it is all to be valued as a whole. It is urged that such a construction will make the statute in violation of §§ 2 and 3 of article 7 of the constitution of Washington. Section 2 provides for a uniform and equal rate of taxation on all property in the state according to its value. Section 3 provides that the legislature shall, as near as may be, provide the same methods for assessing corporate property as are provided for assessing individual property. We are unable to see that the above statutory provision conflicts with the said constitutional provisions. It certainly does not undertake to prevent a uniform rate from being applied to mining property as well as to all other property, and it provides no different method for assessing mining property belonging to a corporation from that employed in assessing the same class of property belonging to individuals. It provides a uniform method for assessing the same class of property throughout the state, and it is to be subjected to the same rate of taxation as all other property. The mere fact that improvements upon other real property may be listed and valued separately does not prevent the

improvements upon mining lands from being as fully valued in connection with the whole, and therefore no inequality results. But it is further insisted that the rule for valuation of mining property under the statute quoted is not uniform with the rule as to other property, for the reason that the rule as to other property is stated in the same section to be as follows: "The true cash value of the property shall be that value at which the property would be taken in payment of a just debt from a solvent debtor." It is urged that the value at which property "would be taken in payment of a just debt from a solvent debtor" is not equivalent to the value called for by the provision for valuing mining property, which is that it shall be valued at such a price as it "would sell at a fair voluntary sale for cash." We are unable to see any distinction in the result of applying the two rules. One taking property in payment of a debt from a solvent debtor would not be compelled to do so, and the act in so taking property would be as voluntary in estimating its cash value as though he were making a voluntary purchase for cash.

It is next urged that the method used by the assessor in fixing the valuation was fatally wrong. It is insisted that in fixing the value upon this property he ascertained the selling price of the capital stock of appellant company as of March 1, 1899, and valued the whole capital stock from the selling price per share, and then adopted one-fifth of such aggregate sum as the value of the mining property. There is evidence to the effect that such calculations and estimates were made, but the assessor himself testified that he valued the property after having gone upon it and looked at it, and that he placed such value upon it as, in his judgment, was its real worth. It is immaterial what calculations or estimates he may have made, or by what process of reasoning he arrived at his

final conclusion, if in fact that conclusion was the result of his honest judgment as to the value, considered with reference to the property itself, after an examination thereof. We think it sufficiently appears that the assessor acted upon his best judgment as to the value of this property, and that it does not satisfactorily appear that he acted with reference to some arbitrary rule, without taking into consideration the real essence of value. He went upon the property and looked at it, but did not go into the mine. He says there was water in some places, which prevented him from going entirely through. Sufficient good faith appears to satisfy us that the assessment was not fraudulently or arbitrarily made. The value placed upon the property by the assessor was $150,000, and appellant afterwards appeared before the board of equalization and asked to have the entire property stricken from the assessment roll upon the ground that it was not taxable upon the 1st day of March of that year. The application was denied, the correctness of which is not questioned here; and, in any event, appellant is offering to pay a certain sum for taxes for that year, thereby recognizing that it was taxable property. Following the above application, appellant asked the board of equalization to reduce the amount of the assessment in the aggregate, which application was granted and the amount was reduced to $100,000, being two-thirds of the original assessment. We think there is sufficient evidence in the record to show that the above sum was not excessive and not disproportionate to the valuations placed upon other property.

It is also urged against the validity of this assessment that the assessor omitted from the assessment rolls about 3,000 mining claims in Ferry county. It sufficiently appears that these must have been mining prospects, to

which the claimants had no more than possessory rights. They were doubtless scattered at remote places in said county, and there is no evidence that they had been developed so as to show that they were of any real value. They may have been deemed by the assessor to be such property as was not assessable, as being public lands of the United States, no legal title having passed to the claimants; and he may have believed that the equitable title arising from the mere possessory right was not subject to taxation. Again, he may have considered that they had no value that could be ascertained. The omission of the assessor to assess certain parcels of property, whether arising from a misapprehension of the law or from a mistake of fact, will not invalidate his general assessment. *People v. McCreery*, 34 Cal. 432; *Muscatine v. Mississippi & M. R. R. Co.*, 1 Dill. 537.

We think the court below committed no error, and the judgment is affirmed.

REAVIS, C. J., and FULLERTON, MOUNT, WHITE, ANDERS and DUNBAR, JJ., concur.