[No. 6083. Decided August 28, 1906.]

BARTLETT DOE, *Respondent,* v. TENINO COAL AND IRON COMPANY *et al., Appellants,* ISAAC BLUMAUER, *Defendant.*[1]

PARTIES—CAPACITY TO SUE—TRUSTEE OF EXPRESS TRUST. One of the foreign executors of an estate, who is, in writing, empowered by the beneficiaries of such estate to purchase certain property in the interest of the estate, is thereby constituted a trustee of an express trust, within Bal. Code, § 4825, authorizing such a trustee to sue in his own name for recovery of the property.

TAXATION — NATURE OF PROPERTY — MINES — MACHINERY USED IN COAL MINES. Under Bal. Code, § 1656, 1698, engines, boilers, pumps, coal and water cars, rails, tools and implements used, or for use, in connection with the operation of a coal mine, are assessable as real estate; and an assessment thereof as personal property, and a tax sale thereunder of the entire property, is void; although some items alone of comparatively inconsiderable value might properly be assessed as personal property.

REPLEVIN—DAMAGES FOR DETENTION—TRIAL—EXCESSIVE VERDICT. Where in replevin the verdict finds the value of the property taken to be $4,324.90, and by a special verdict the cost of restoring the property and interest by way of damages for detention is found to be only $398.35, a verdict for $4,130 damages for detention, is excessive, and will be reduced on appeal to the proper amount.

1Reported in 86 Pac. 938.

Appeal from a judgment of the superior court for Thurs-
ton county, Chapman, J., entered August 25, 1905, upon the
verdict and special findings of a jury rendered in favor of
the plaintiff, in an action of replevin.   Modified.

*Vance & Mitchell,* for appellants.

*J. W. Robinson* and *Teal & Minor,* for respondent.

Root, J.—For several years from 1886 or 1887 to 1894,
the Northwestern Coal and Transportation Company, a cor-
poration, operated the Bucoda coal mine in Thurston county,
and used in connection therewith certain engines, boilers,
pumps, coal and water cars, rails, tippers, screen bars, tools
and implements, such as are ordinarily used in the coal-
mining business.   In 1894 the mine closed down and has
not since been operated.   In 1896 or 1897 the property was
sold by a receiver to the respondent herein, who purchased it
for the benefit of the estate of John S. Doe, deceased, of
which estate he was one of the executors.   By instrument
dated at San Francisco, California, February 25, 1897, Ella-
nor H. Doe, in her own right and as guardian of the estate
of Mary Marguerite Doe, a minor, authorized this respond-
ent and one Charles F. Doe, "as executors of the estate of
John S. Doe, deceased," to buy this property.   Said written
instrument contained this provision:

"And it is understood and agreed by and between the said
Bartlett Doe and Charles F. Doe and Ellanor H. Doe, that in
event this property is purchased on said sale by and in the
name of Bartlett Doe, the said purchase shall be made for
and in the interest of the estate of John S. Doe, deceased, and
not in the interest of Bartlett Doe individually."

It appears that Ellanor H. Doe and Mary Marguerite Doe
were beneficiaries under the will of said John S. Doe, de-
ceased.   From the years 1894 until 1903, the property herein
involved was, with the exception of two years, assessed as
personal property, and in the name of the Northwestern Coal
and Transportation Company, and the taxes paid by respond-

ent or his agent. The taxes for the years 1902 and 1903, levied against this property as personal property became delinquent, and steps were taken by the treasurer of Thurston county to sell said property to pay said taxes. Numerous questions are presented as to the correctness of the county's procedure in making this sale. One Sanford, the purchaser at said sale, subsequently sold and transferred all of his rights in and to said property to appellant, the Tenino Coal and Iron Company. On or about November 22, 1904, the appellant Tenino Coal and Iron Company proceeded to remove the property, and did remove a portion of it before being enjoined by respondent herein. This action was prosecuted by respondent to recover the property so taken by said appellant, and to recover damages for the wrongful taking thereof, and for injury done to the real estate by reason of the removal of said property. The jury made special findings as to the value of the various items of property taken by said appellant. According to their findings, the total value of the property removed was $4,324.90. They also returned a general verdict for damages in the sum of $4,130. Judgment was entered on the verdict for the return of the property or for its value if not returned, and for the sum of $4,130, as damages. From this judgment an appeal is prosecuted.

It is urged first by appellants that respondent has no capacity to sue; that he is one of the executors of the will of said John S. Doe, deceased, holding under an appointment by the court of the state of California, and consequently without authority to maintain any action as such executor in this state. We think, however, that the written instrument signed by himself and Charles F. Doe and Ellanor H. Doe, hereinbefore referred to, by virtue of which he purchased this property, has the effect of constituting respondent the trustee of an express trust within the contemplation of Bal. Code, § 4825 (P. C. § 253).

The various questions raised in the briefs with reference to the regularity and validity of the sale of this property

by the county treasurer need not be considered by us in view of the conclusion which we have reached as to the character of this property for taxation purposes. It had all been used, or was for use, in connection with the operation of the coal mines, and constituted improvements upon the real estate embracing said mines, and was assessable as real estate under our revenue statutes. Bal. Code, §§ 1656, 1698 (P. C. §§ 8592, 8634); *Eureka etc. Min. Co. v. Ferry Co.,* 28 Wash. 250, 68 Pac. 727; *People ex rel. Dunkirk etc. R. Co. v. Cassity,* 46 N. Y. 46; *People ex rel. Nat. Starch Mfg. Co. v. Waldron,* 26 N. Y. App. Div. 527, 50 N. Y. Supp. 523; *Pennsylvania R. Co. v. Pittsburg,* 104 Pa. St. 522; *In re Des Moines Water Co.,* 48 Iowa 324; *Oskaloosa Water Co. v. Board of Education,* 84 Iowa 407, 51 N. W. 18; *Paris v. Norway Water Co.,* 85 Me. 330, 27 Atl. 143, 35 Am. St. 371; *Union Compress Co. v. State,* 64 Ark. 136, 41 S. W. 52. If there were certain items of this property that could properly have been assessed as personal property, yet, under the rule laid down in the *Eureka* case, the value of these portions was so inconsiderable when compared with that of the entire property that it was not necessary to assess them as personalty. The sale of the entire property as personalty to satisfy a personal property tax levied against it was null and void.

This brings us to an inquiry touching the amount of recovery. According to the findings of the jury, the value of the property taken aggregated $4,324.90. Under the instruction given by the trial court, the damage caused by the detention of this property should have been estimated at the rate of six per cent interest from November 18, 1904, to June 14, 1905, which would amount to $148.35. In answer to special interrogatories, the jury found that the cost of restoring the engines and the buildings where they were situate would be $100, and that the cost of restoring the boiler and its building would be $150. These were the only damages alleged in the complaint, which the trial court submitted to the jury. It is

therefore apparent that the amount of the general verdict is excessive.

· Numerous errors are assigned by appellants upon the rulings of the trial court in admitting testimony. We think that some of the evidence to which appellants excepted was immaterial and incompetent. But we think its injurious effect can be corrected by a reduction of the amount of the recovery.

The case is remanded to the superior court, with instructions to modify its judgment by reducing the amount of recovery from $4,130 to $398.35. Costs in this court to appellants.

MOUNT, C. J., DUNBAR, FULLERTON, and CROW, JJ., concur.