[No. 40407.    En Banc.    May 20, 1970.]

PIER 67, INC., *Respondent*, v. KING COUNTY *et al.,*
*Appellants.**

*Charles O. Carroll, James E. Kennedy,* and *William L.
Paul, Jr.,* for appellant.

*Jennings P. Felix & Associates,* by *Jennings P. Felix,* for
respondent.

*The Attorney General* and *Timothy R. Malone, Assistant,*
amicus curiae.

WEAVER, J.—Fundamentally, this case presents one prob-
lem: the standards of valuation and assessment, for tax

*Reported in 469 P.2d 902.

purposes, applicable to a leasehold of tax-exempt land owned by the state in perpetuity within the boundaries of a harbor area as defined in article 15 of the Washington constitution.[1]

Plaintiff corporation leased the Seattle harbor land in question from the State of Washington for a period of 30 years. It improved the existing pier by building on it a motor hotel known as the Edgewater Inn. The hotel is permanent in nature and any attempt to remove it would result in its destruction. The buildings permanently erected became a part of the realty. The state owns both the fee and the improvements, subject to plaintiff's contractual right of user.

This is an action to recover taxes paid under protest to defendant county. The county assessor, viewing the lease-hold as personal property, maintained that the leasehold value was the cost of the improvements less depreciation. The trial court accepted plaintiff's theory of the case and ordered the leasehold reassessed. We affirmed that ruling in *Pier 67, Inc. v. King County,* 71 Wn.2d 92, 426 P.2d 610 (1967). In doing so, however, the court laid down certain standards for valuation and assessment of leaseholds, based upon four early decisions of this court. *Metropolitan Bldg. Co. v. King County,* 62 Wash. 409, 113 P. 1114 (1911); 64 Wash. 615, 117 P. 495 (1911); 72 Wash. 47, 129 P. 883 (1913); *In re Metropolitan Bldg. Co.,* 144 Wash. 469, 258 P. 473 (1927).

The standards used in the reassessment were again challenged. This time the trial court ordered that

the true and fair market value for property tax purposes of the leasehold interest of the plaintiff herein . . . is zero, and the true and fair value of the personal property

---

[1]In *Pier 67, Inc. v. King County,* 71 Wn.2d 92, 426 P.2d 610 (1967), the first appeal in the instant case, the court inaccurately identified the property involved as *tidelands.* It appears in the findings of fact that Pier 67 is within the boundaries of a *harbor area* and is governed by the constitutional provisions and statutes applicable thereto. RCW 79.01.508, *et seq.*

of the plaintiff other than the leasehold herein is $150,000 . . .[2]

The court determined the value of the leasehold for tax purposes to be zero because the hotel's net earnings in the taxable years were exceeded by the total of the rent and mortgage payments due. On this appeal, we conclude that this is error. The separate and individual rules of assessment laid down in the *Metropolitan Building Co.* cases, *supra,* when added together, produce an unrealistic result and are no longer the law of this jurisdiction.

At the outset, plaintiff contends: (a) that the issues decided in the first appeal have become the law of the case, and we are precluded from considering them again; and (b) that the doctrine of stare decisis precludes us from reviewing the law of this jurisdiction, as announced in the *Metropolitan Building Co.* cases, *supra.* We do not agree with either contention as applied to the instant case.

■ In *Greene v. Rothschild,* 68 Wn.2d 1, 402 P.2d 356, 414 P.2d 1013 (1965), we reversed our holding in a prior appeal of the same case. We held that the law-of-the-case doctrine is a self-imposed limit upon our power to review and is discretionary in operation. We concluded, therefore, that the doctrine does not curtail our jurisdiction should we decide, upon reflection, that a holding in a previous opinion in the same case is error.

The *Greene* opinion describes the circumstances in which this court will not apply the doctrine:

Under the doctrine of "law of the case," as applied in this jurisdiction, the parties, the trial court, and this court are bound by the holdings of the court on a prior appeal until such time as they are "authoritatively overruled." [Citations omitted.] Such a holding should be overruled if it lays down or tacitly applies a rule of law which is clearly erroneous, and if to apply the doctrine would work a manifest injustice to one party, whereas no corresponding injustice would result to the other party if the erroneous decision should be set aside.

■ It is not our intention to detract in any manner

---

[2]No error is assigned to the court's valuation of the personal property; hence, we do not consider it.

from the importance of the doctrine of stare decisis. The doctrine brings stability and continuity to the law; yet the magnitude of an error, spawned only 22 years after statehood, that permits private enterprise to minimize or escape taxation of leaseholds upon tax-exempt real property forces us to conclude that the court must again address itself to issues previously raised.

Stare decisis is a doctrine developed by courts to accomplish the requisite element of stability in court-made law, but is not an absolute impediment to change. Without the stabilizing effect of this doctrine, law could become subject to incautious action or the whims of current holders of judicial office. But we also recognize that stability should not be confused with perpetuity. If the law is to have a current relevance, courts must have and exert the capacity to change a rule of law when reason so requires. [*In re Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d 508 (1970).]

We proceed to the merits.

The general approach to ad valorem property taxation in Washington is stated in article 7, section 2 of the state constitution: the taxable assessment shall equal " . . . fifty per centum of the true and fair value of such property in money." This provision applies to all property not exempt from taxation, and requires a uniform and equal rate of taxation on all property according to its value.

RCW 84.40.030 follows the constitution with the general standard of valuation:

the assessor . . . shall value each article or description of property by itself, and at such price as he believes the same to be fairly worth in money at the time such assessment is made. The true cash value of property shall be that value at which the property would be taken in payment of a just debt from a solvent debtor.

The same statute also provides:

Taxable leasehold estates shall be valued at such price as they would bring at a fair, voluntary sale for cash.

Comparing these two provisions in *Eureka Dist. Gold Mining Co. v. Ferry County*, 28 Wash. 250, 259, 68 P. 727 (1902), the court said:

We are unable to see any distinction in the result of applying the two rules. One taking property in payment of a debt from a solvent debtor would not be compelled to do so, and the act in so taking property would be as voluntary in estimating its cash value as though he were making a voluntary purchase for cash.

■ Clearly, the standards of valuation for assessing leaseholds are the same standards for valuing and assessing taxable property in general. *See Ozette Ry. v. Grays Harbor County*, 16 Wn.2d 459, 133 P.2d 983 (1943).

The county contends that rather than value taxable leasehold estates "at such a price as they would bring at a fair, voluntary sale for cash" it has the right, in the alternative, to assess the improvements on the land. It claims that this alternative springs from RCW 84.04.080:

"Personal property" for the purposes of taxation, shall be held and construed to embrace and include, . . . *all leases of real property and leasehold interests therein for a term less than the life of the holder; [and] all improvements upon lands the fee of which is still vested in the United States, or in the state of Washington; . . .* [Italics ours.]

The same statute (RCW 84.04.080), which defines "personal property" for the purposes of taxation, also provides:

[N]o deduction shall hereafter be made or allowed on account of any indebtedness owed.

We disagree that the legislature, by passage of RCW 84.04.080 in its present form, intended to give the assessor the alternative to tax either the leasehold, as required by statute, or to tax the improvements thereon. A brief examination of the statute's legislative history shows why this alternative does not exist.

Commencing with the Revenue Law of 1891, it is clear that the legislature intended to tax the possessory interest in land of one either purchasing land from the state or in the process of acquiring title by virtue of homestead statutes.

Section 3 of the 1891 Revenue Law provided:

Personal property for the purposes of taxation, shall be construed to embrace and include, . . . all *improve-*

*ments* upon lands, the fee of which is still vested in the United States, or in the State of Washington, . . . [Italics ours.] [Laws of 1891, ch. 140, § 3, p. 280]

Section 24 of the 1891 Revenue Act provided:

Property held under *a contract for the purchase* thereof, belonging to the state . . . shall be considered, for all purposes of taxation, as the property of the person so holding the same. [Italics ours.] [Laws of 1891, ch. 140, § 24, p. 290]

The meaning of the word "improvements," and the meaning of this provision within the definition of "personal property," is made clear by § 25 of the same act:

The assessor must assess all improvements on public lands as personal property until the *settler* thereon has made final proof. After final proof has been made, and a certificate issued therefor, the land itself must be assessed, notwithstanding the patent has not been issued. [Italics ours.] [Laws of 1891, ch. 140, § 25, p. 290]

It is clear that these provisions applied to taxing as personal property improvements upon state-owned, tax-exempt real property when in the possession of a homesteader or of a vendee of the state.

In 1906 the taxability of leaseholds of state-owned, tax-exempt land was presented to the court in *Moeller v. Gormley*, 44 Wash. 465, 87 P. 507 (1906). It was an action to restrain King County from collecting *personal property* taxes on leasehold interests in state-owned, tax-exempt tidelands. The court held that under existing statutes the leasehold was not taxable as personal property, but was taxable as real property, "subject to the general rule of taxation." The court noted, however, that the then existing revenue law was probably inadequate to enforce tax collection when the leasehold of state-owned property was assessed as real property.

The court did not doubt that the legislature would "give the matter appropriate attention if it be called to its attention."

The legislature promptly gave "appropriate attention" by adopting Laws of 1907, ch. 108, § 1, p. 206:

> For the purposes of assessment and taxation all leases of real property and leasehold interests therein for a term less than the life of the holder, shall be and the same are hereby declared to be *personal property.* [Italics ours.]

This was the forerunner of our present statute, RCW 84.04.080. It is clear that leases were defined as personal property for purposes of taxation so that the leasehold interest might be taxed, and the tax collected, when the lease was on tax-exempt land.

It follows that the assessor does not have an alternative method of assessing leaseholds on tax-exempt land, for they are, as pointed out in *Moeller,* "subject to the general rule of taxation" and "shall be valued at such price as they would bring at a fair, voluntary sale for cash." RCW 84.40-.030.

Further, the county argues it has a choice of taxing improvements rather than the leasehold, even though the improvements are a lesser interest than the leasehold estate of which they are a part. This theory of fragmenting property interests for the purpose of assessment is contrary to the theory of unit assessment that the court announced in *Trimble v. Seattle,* 64 Wash. 102, 116 P. 647 (1911), *aff'd* 231 U.S. 683, 58 L. Ed. 435, 34 S. Ct. 218 (1914), and more recently in *Alaska Land Co. v. King County,* 77 Wn.2d 247, 461 P.2d 339 (1969), and *Clark-Kunzl Co. v. Williams,* 78 Wn.2d 59, 469 P.2d 874 (1970).

The only remaining question is whether the *Metropolitan Bldg. Co.* cases correctly interpreted the statutory standards for leasehold valuation. After a thorough reexamination of those cases, we have concluded that they represent a radical departure from the scheme of Washington ad valorem taxation.

In general these cases hold that the value of a leasehold of tax-exempt state real property for tax assessment is an amount equal to the excess, if any, of rents reserved and mortgage indebtedness. In the instant case, the amount is zero.

The result of such a method of valuation is to permit the

lessee of state-owned, tax-exempt land to avoid taxation on a substantial portion of the value of his leasehold interest. To discover why the court reached this anomalous conclusion requires scrutiny of the cases themselves.

In 1907, the Metropolitan Building Company leased the old University of Washington campus in what is now downtown Seattle. Being owned by the state, the land was tax-exempt. At substantial expense the lessee improved the property with large office buildings. Under the terms of the lease, the lessee was responsible for roads, sidewalks, sewers and other improvements to the land itself; it financed these improvements by the issuance of bonds.

The first case, *Metropolitan Bldg. Co. v. King County*, 62 Wash. 409, 113 P. 1114 (1911), arose when in 1909 the county assessor assessed the leasehold in an amount based upon what the lessee "had put into the property." The court correctly held that the investment did not represent the leasehold's value, but then said:

> In determining the worth of a leasehold the courts have universally held that it is the value of the term less the *rent reserved*. [Italics ours.]

The court recognized that the value of the leasehold term minus the rent reserved is the means used in calculating a lessee's damages when his leasehold is *condemned*. Condemnation valuation represents the lessee's *equity* in the leasehold; it is a non sequitur to say that it is its true value for ad valorem taxation. Taxation of property at its value, without regard to the owner's equity, is an established principal of ad valorem taxation.

Other states with property taxation statutes similar to ours distinguished leasehold valuation for the purpose of taxation from leasehold valuations in eminent domain proceedings. *See Texas Co. v. County of Los Angeles*, 52 Cal. 2d 55, 338 P.2d 440 (1959).

The distinction between the lessee's equity in a leasehold and the value of the leasehold estate for tax purposes is a valid one. The fact that a leasehold interest has not appreciated does not mean that it is worth nothing. The value to be taxed is the value of the right to use the property over

the period of the lease. This view is clearly set forth in *People ex rel. Kucharski v. T.W.A.,* 43 Ill. 2d 174, 176, 251 N.E.2d 225 (1969), in which a lessee of tax-exempt property argued that his lease was valueless because it showed no profit. The Illinois Supreme Court rejected the lessee's contention:

> [W]hat is being taxed is the value of the leasehold, in the sense of the price for which it can be sold, not the value of the leasehold *to the tenant,* in the sense of the profit that the tenant can make upon a sale of the lease. Contrary to the objector's suggestion, the fact that the lessee's net worth was not increased by entering into the lease does not affect the market value of the leasehold estate.

The last two *Metropolitan Bldg. Co.* cases added a further qualification to leasehold valuation: mortgaged indebtedness, as well as rents reserved, was to be deducted in assessing leasehold value. In *Metropolitan Bldg. Co. v. King County,* 64 Wash. 615, 117 P. 495 (1911), the court struck down an assessment it considered excessive, on the ground that the leasehold had little or no salable value in the taxable year, since its income did not exceed the total of rents reserved and mortgage payments. In the third case, *Metropolitan Bldg. Co. v. King County,* 72 Wash. 47, 129 P. 883 (1913), the court reviewed the past two cases and held:

> The testimony shows that the leasehold, measured by its burdens and benefits, has no real market value, . . . The leasehold is burdened by a debt exceeding the value placed upon the lease by most of the witnesses. A purchaser of the lease would necessarily stand in the shoes of the respondent. [Taxpayer] . . .
>
> . . . We say here, as we have said before, that the value of the leasehold interest is to be measured both by its burdens and its benefits.

The court left unmentioned the rule of RCW 84.04.080 that no deduction be allowed for indebtedness owed. It simply reiterated the logic of the first two cases: the taxable value was determined to be the lessee's *equity* or the amount in excess of his capital indebtedness.

The final opinion, *In re Metropolitan Bldg. Co.*, 144 Wash. 469, 258 P. 473 (1927), attempted to resolve the incongruity between the prior *Metropolitan* cases and the prohibition of indebtedness deductions found in RCW 84.04.080. The court rationalized that allowing deductions for mortgaged indebtedness did not violate the statute; it merely provided an easy means to amortize the capital investments in improvements:

> The improvements become the property of the state as and when made, and the leaseholder, before any profit can be figured, must provide by some plan of amortization for the return of the money invested in the improvements, together with reasonable interest thereon during the time it is so invested.

We now conclude that this was error.

In measuring fair market value and complying with the mandate of the statutes, the assessor has a number of appraisal methods at his disposal. Normally a taxable property is appraised by a number of methods and the results of each are collated into a single figure representing the assessed value. *See, The Valuation of Leaseholds for Ad Valorem Property Tax Purposes—The Reasonable Assessor Standard,* 1968 Wash. U. L. Quarterly 136 (1968).

RCW 84.40.030 states a standard by which valuation is to be determined, but it makes no single method of appraisal mandatory. The legislature did, however, provide in RCW 84.04.080 that no deduction be allowed for any indebtedness owed. It is clear that the legislature did not contemplate appraising a leasehold in the manner required by the last Metropolitan case.

The market value of a leasehold is to be measured by considering both benefits to be garnered from the use of the property over the term of the lease and the burdens placed upon it. Burdens on the leasehold are restrictions which limit its use. These burdens may arise from zoning ordinances or other legal limits on land use or may be restrictions imposed by the terms of the lease itself.

Indebtedness does not represent a burden on the leasehold. Though it may be a burden on the lessee, we have

already concluded that the ad valorem tax is not on the lessee's equity; it is on the value of the leasehold term. *De Luz Homes, Inc. v. San Diego County*, 45 Cal. 2d 546, 290 P.2d 544 (1955).

The benefits of a leasehold may stem from its economic productivity. It cannot be valued without reasonable knowledge of its probable remaining life. Further, an option to renew the lease may increase the value of the leasehold because it may afford an opportunity to extend the duration of benefits.

These are some of the factors the assessor may take into consideration, but they are not exclusive.

The ultimate responsibility of the assessor is to determine the true cash value of the property. No "rule of thumb" can be formulated to fit every situation; but the assessor must consider all relevant circumstances pertinent and helpful in making his assessment within the ambit of the applicable statutes. An assessment which meets this test will not be set aside by the courts unless the property is so grossly overvalued as to result in a fraud upon the property owner. *Templeton v. Pierce County*, 25 Wash. 377, 65 P. 553 (1901); *Alaska Land Co. v. King County*, 77 Wn.2d 247, 461 P.2d 339 (1969).

In the instant case, when the trial court fixed the assessed value of plaintiff's leasehold interest at zero, it followed our previous opinions and applied doctrines which we now overrule.

The order and judgment fixing the value of the leasehold at zero during the taxable years involved is reversed.

HUNTER, C. J., FINLEY, ROSELLINI, HAMILTON, HALE, NEILL, and STAFFORD, JJ., and HILL, J. Pro Tem., concur.

August 19, 1970. Petition for rehearing denied.