IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| UNITED AIRLINES, INC., a Delaware corporation, | ) ) ) | No. 73606-0-I |
| Appellant, | ) ) | DIVISION ONE |
| v. | ) ) ) | |
| KING COUNTY, a governmental entity, and WASHINGTON STATE DEPARTMENT OF REVENUE, | ) ) ) ) | PUBLISHED OPINION |
| Respondents. | ) ) ) | FILED: June 6, 2016 |

2016 JUN -6 AM 9: 05
COURT OF APPEALS DIV I
STATE OF WASHINGTON

BECKER, J. — An administrative refund of taxes under chapter 84.69 RCW is not available as an avenue for challenging an alleged error in determining the valuation of property. To challenge a tax as unlawful or excessive, a taxpayer must pay the tax under written protest and then file suit under RCW 84.68.020. Because the appellant in the present case attempted to use the administrative refund process to challenge the appraisal method by which appellant's property interest was valued, the trial court properly dismissed the action on summary judgment.

Summary judgment rulings are reviewed de novo. Summary judgment is authorized when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. A material fact is one upon which the

outcome of the litigation depends in whole or in part. Samis Land Co. v. City of Soap Lake, 143 Wn.2d 798, 803, 23 P.3d 477 (2001).

Appellant United Airlines is a commercial air carrier that flies in and out of SeaTac International Airport, which is located in King County. United has leased property at SeaTac since the airport opened in the 1940's. Several of the leases have been short in nature, but they have always been renewed. In January 2006, United and the Port of Seattle agreed to a six-year lease.

The port, as a municipal corporation, is exempt from taxation on property it owns at SeaTac. RCW 84.36.451(1)(a). This exemption does not apply to United's leasehold. RCW 84.36.451(2)(a). A nongovernment entity leasing government-owned property has a taxable possessory interest. Clark-Kunzl Co. v. Williams, 78 Wn.2d 59, 64, 469 P.2d 874 (1970).[1]

The basis of valuation of a taxable leasehold estate is established by statute. "Taxable leasehold estates must be valued at such price as they would bring at a fair, voluntary sale for cash without any deductions for any indebtedness owed including rentals to be paid." RCW 84.40.030(2). The parties agree that the value of a taxable possessory interest "is normally something less" than the value of a fee ownership. See GEORGE KINNEAR &

_____

[1]United, an "airplane company," RCW 84.12.200(1)-(2), is subject to assessment by the Department of Revenue, rather than by the county in which it operates. RCW 84.12.270; see also RCW 82.29A.130(1) (exempting such companies from paying the leasehold excise tax).

CLYDE B. ROSE, WASH. DEP'T OF REVENUE, PROCEDURE GUIDE FOR THE APPRAISAL OF POSSESSORY INTERESTS 2 (Nov. 1970),[2] which provides as follow:

### 1. DEFINITIONS AND NATURE OF POSSESSORY INTERESTS

Taxable possessory interests are private interests in property owned by a tax exempt body, usually a public agency.

A taxable possessory interest constitutes a private right to the possession, and use of such property for a period of time. It constitutes the ownership of property for some time less than perpetuity. It is a portion of the bundle of rights that would normally be included in a fee ownership, and its value therefore is normally something less than the value in perpetuity of the whole bundle.

Before 2006, the department employed an imputed return approach to valuing possessory interests in airline leaseholds at SeaTac. The value was computed using a discounted cash-flow model that capitalized the net annual lease payments assuming a seven-year remaining life.[3]

In 2006, the department decided to change to a variation of what is known as a residual approach for valuing possessory interests. The residual approach first computes the present value of the leasehold by capitalizing the net amount of lease payments for a single year using a capitalization rate determined from a review of rate studies. The second step is to consider the present value of the government-owned reversionary interest and to subtract it if it has any material value. Using the residual approach, the department "looked for evidence suggesting that the lease would not be renewed at the end of its express term." Where the evidence suggested that the lease would continue to be renewed into the foreseeable future, the port's reversionary interest "was

---

[2] Clerk's Papers at 45 (Exhibit 1, declaration of Kathy Beith, assistant director of the property tax division for the Washington State Department of Revenue).

[3] Clerk's Papers at 33 (declaration of Kathy Beith).

considered to be minimal." According to the department, a significant difference is that the residual approach used a direct capitalization method, whereas the imputed return approach used limited-life yield capitalization.[4]

The residual approach resulted in valuations that were significantly higher than the valuations calculated under the imputed return approach.[5] Using the residual approach, the department, at least in some cases, calculated the value of the government-owned reversionary interest at "nil" or "zero."[6]

After receiving objections from airline companies, and after internal study and discussion, the department agreed to change from the residual approach to a modified version of the earlier imputed return approach. This methodology used the actual lease term rather than a hypothetical perpetual lease.[7]

United requested an administrative refund of taxes paid to King County from 2009 through 2011. For each year, the department had valued United's possessory interest by using the residual approach and assuming a hypothetical perpetual lease. The county denied the request.

United brought this action in superior court in December 2013. The department intervened to defend the county and to protect its own interests. The department moved for summary judgment seeking affirmance of the county's denial of United's refund claim. United filed a cross motion for summary judgment. The court granted the department's motion. United appeals.

---

[4] Clerk's Papers at 34 (declaration of Kathy Beith).
[5] Clerk's Papers at 320-21 (declaration of Kathy Beith).
[6] Clerk's Papers at 331 (deposition testimony of Kathy Beith).
[7] Clerk's Papers at 35 (declaration of Kathy Beith).

At the outset, it is important to understand that requesting an administrative refund of taxes is different from filing suit to challenge a tax as unlawful or excessive. To challenge a tax as unlawful or excessive, a taxpayer must pay the tax under written protest. The protest must set forth all of the grounds upon which such tax is claimed to be unlawful or excessive. RCW 84.68.020. The next step, which must be taken within a short window of time, is to bring an action in court to recover the tax. RCW 84.68.060. United paid the taxes, but not under protest. United did not file suit to challenge the tax as unlawful or excessive. United is proceeding under the administrative refund statute, RCW 84.69.020.

A request for an administrative refund is directed to the county treasurer rather than to a court. RCW 84.69.030(1)(b).[8] A refund request may be filed within three years after the due date of the payment to be refunded. RCW 84.69.030(1). Payment under protest is not required. RCW 84.69.170. With some exceptions not relevant here, a request for an administrative refund will not be granted if the basis for the request is a claimed error in the valuation of the property. RCW 84.69.020.

Upon receiving a request for an administrative refund of ad valorem taxes, the county treasurer determines whether the request fits any of the limited statutory circumstances set forth in 16 subsections of RCW 84.69.020. If the county treasurer rejects the request, an action may be brought in superior court to contest the treasurer's decision. RCW 84.69.120.

---

[8] In King County, the responsibility for handling such requests has been delegated to the county assessor.

5

The 16 subsections are, in general, readily recognizable as situations in which there has been an administrative mistake in the collection of taxes that can be corrected without a reappraisal of the property. For example, taxes may be refunded if they were paid more than once, paid as a result of a clerical error in extending the tax rolls, paid with respect to an improvement which did not exist on the assessment date, or paid under levies or statutes adjudicated to be illegal or unconstitutional. RCW 84.69.020(1), (3), (5)-(6).

United based its request for a refund on RCW 84.69.020(2). Under this subsection, taxes must be refunded if they were paid "as a result of manifest error in description." Manifest error means "an error in listing or assessment, which does not involve a revaluation of property." WAC 458-14-005(14). A manifest error may be, for example, an error in the legal description, a clerical or posting error, double assessments, misapplication of statistical data, incorrect characteristic data, incorrect placement of improvements, or erroneous measurements. WAC 458-14-005(14)(a)-(g).

Relevant here, a "manifest error" includes "the assessment of property exempted by law from taxation." WAC 458-14-005(14)(h). United claims it was taxed on the port's reversionary interest, which is tax-exempt. According to United, the department's use of the residual approach violated the legal requirements of Washington law for valuing a possessory interest because it determined the value of the port's reversionary interest to be nominal or nil.

The value to be taxed in a leasehold over tax-exempt public property is the "value of the right to use the property *over the period of the lease*." Pier 67,

Inc. v. King County, 78 Wn.2d 48, 55-56, 469 P.2d 902 (1970) (emphasis added), cert. denied, 401 U.S. 911 (1971). United relies on Pier 67, and particularly the above-quoted statement, as authority demonstrating that it was manifest error for the department to use a methodology that assumes a hypothetical perpetual lease term. But the suit in Pier 67 was brought as a challenge to valuation of taxes paid under protest, not as a challenge to the denial of a request for an administrative refund. Pier 67, 78 Wn.2d at 49. The court discussed the standards to be used in valuing leaseholds under RCW 84.40.030(2). The court recognized that the statute makes no particular method of appraisal mandatory so long as the assessor fulfills his ultimate responsibility "to determine the true cash value of the property." Pier 67, 78 Wn.2d at 58 (emphasis added). Because the court was concerned with the standards and methods for valuation of property, the reasoning in Pier 67 is not on point in this case.

United also relies on Duwamish Warehouse Co. v. Hoppe, 102 Wn.2d 249, 684 P.2d 703 (1984). But that case also involved a challenge to valuation, not a request for an administrative refund. A warehouse was built on land leased from the port. The assessor valued the warehouse at its full market value, even though the lease provided that ownership of the structure would automatically be transferred to the port at the end of the lease term. The Supreme Court held that the assessor was obliged to consider the port's reversionary interest. "To disregard the fact that this building reverts to the Port at the end of the lease term, long before its useful life is up, would be to disregard a factor which plainly would affect the price negotiations between a willing buyer and a willing seller.

The result is a nonuniform valuation much higher than the true and fair market value in money which the statute commands." Duwamish Warehouse Co., 102 Wn.2d at 256.

United argues that in this case, the department similarly disregarded the port's reversionary interest. The facts here are not necessarily similar. Unlike in Duwamish Warehouse Co., the department's methodology for valuing airline leaseholds did not fail to consider the port's reversionary interest; rather, the department considered the port's reversionary interest and assigned it a value of nil if it was reasonable to assume that the airline would continue to renew its lease into the foreseeable future. But in any event, what United is challenging is the department's use of a particular appraisal methodology to determine the amount a willing buyer would pay a willing seller for United's possessory interest. If the department erred by determining that the value of the port's reversionary interest was negligible under the circumstances, it was an error in *valuing* the port's reversionary interest, not an error in *describing* United's possessory interest. As discussed above, an error in valuation is not allowed as a basis for an administrative refund. RCW 84.69.020. An error in valuation can be redressed only if the taxpayer pays the tax under protest and brings suit under chapter 84.68 RCW.

A manifest error that will justify an administrative refund must be an error that "can be corrected by reference to the records and valuation methods applied to similarly situated properties, without exercising appraisal judgment." WAC 458-14-005(14)(j). United contends the county assessor could have easily

corrected the alleged error without exercising appraisal judgment. "All that is necessary is to determine the remaining life of the lease and capitalize the lease income over the remaining life of the lease."

It is not obvious that capitalizing the lease income over the remaining life of United's lease would yield the true cash value of United's possessory interest. The department contends that United's proposed approach is flawed because it uses a direct capitalization rate in a yield capitalization model without any analytical data to support that choice. United does not refute this contention. And even if United's proposed approach is an acceptable method of appraisal, it is not the only one. No rule of thumb can be formulated to fit every situation. Pier 67, 78 Wn.2d at 58. Appraisal judgment is required.

United offers a California case as authority for the proposition that taxation of an airline's possessory interest must be based on the remaining term of its lease. Am. Airlines v. County of Los Angeles, 65 Cal. App. 3d 325, 135 Cal. Rptr. 261 (1976). To the extent that Am. Airlines holds it is illegal to anticipate that an airline lease will be renewed when it does not include a renewal option, it does not change our conclusion that United is alleging an error in valuation. Under Washington's statutory scheme, an error in valuation is not a proper subject for a request for an administrative refund.

United contends a trial is necessary because the expert witnesses in the case offered contradictory opinions. An appraiser testifying on behalf of United opined that the department effectively taxed the airline as if it owned the leasehold property in fee simple. An expert witness testifying on behalf of the

department disagreed. These disagreements do not create a material issue of fact because they relate to a dispute over how to arrive at a fair and accurate *valuation* of United's property.

In summary, the use of an appraisal method that assigned a nil value to the port's reversionary interest after consideration of all the circumstances cannot be characterized as the manifest error of assessing property exempted by law from taxation. The trial court did not err in dismissing United's suit on summary judgment.

Affirmed.

Becker, J.

WE CONCUR:

Cox, J.